✓ FILED          RECEIVED
ENTERED          SERVED ON
COUNSEL/PARTIES OF RECORD

MAR 27 2015

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY: _____ DEPUTY

1                 **UNITED STATES DISTRICT COURT**

2                    **DISTRICT OF NEVADA**

3

4    WILLIAM ENGLAND,                   3:13-cv-00188-RCJ-VPC

5                  Plaintiff,

6    v.                           **REPORT AND RECOMMENDATION**

7                             **OF U.S. MAGISTRATE JUDGE**

8    SHERYL FOSTER, *et al.,*

9                  Defendants.

10

11       This Report and Recommendation is made to the Honorable Robert C. Jones, United

12 States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28

13 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary

14 judgment (#52). Plaintiff opposed (#55), and defendants replied (#59). For the reasons stated

15 below, the court recommends that the motion be granted.

16                     **I.**      **BACKGROUND**

17       William England ("plaintiff") is an inmate in the custody of the Nevada Department of

18 Corrections ("NDOC") and is currently incarcerated at High Desert State Prison in Indian

19 Springs, Nevada. The events precipitating this lawsuit occurred during a period of custody at

20 Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada. Proceeding *pro se*,

21 plaintiff asserts claims under the Religious Land Use and Institutionalized Persons Act

22 ("RLUIPA"), 42 U.S.C. § 2000cc, and also 42 U.S.C. § 1983 for violations of his First and

23 Fourteenth Amendment rights.

24       Plaintiff is a Nation of Islam ("NOI") Muslim. NOI is a religious movement within Islam,

25 and it shares some, but not all, of Islamic tenets and beliefs. As with other Muslims, plaintiff's

26

27

28

religious practices include certain food restrictions as part of a halal diet.[1]  As plaintiff explains in his complaint, in lieu of an Islamic halal meal, NOI adherents may consume a Jewish kosher meal without running afoul of their religious beliefs: ". . . Kosher is allowed and comports with the Muslims diet when Halal is unavailable." (#6 at 6.)

In June 2011, plaintiff requested that he be placed on the kosher meal list at NNCC to comply with halal requirements.  His request was approved.  Sometime in late July, plaintiff was notified by prison officials that he and other Muslim inmates would be removed from the kosher meal list.  Moving forward, the kosher meal would be available only to Jewish inmates.  NDOC officials removed non-Jewish inmates from the list due to the exploding costs of kosher meals across NDOC institutions: each kosher meal significantly exceeded the standard daily food budget for an individual inmate.  Plaintiff was informed that he could request a vegetarian meal, however, and that meal respected all halal requirements.  On several instances following July 2011, plaintiff grieved his removal from the kosher meal list, but each grievance was denied.

In 2012, the NDOC instituted the "common fare" meal, which had a lower cost than the then-existing kosher meal and complied with the faith requirements of several religious groups, including those of Jewish and Islamic faith.  The common fare diet is kosher and complies with halal restrictions, although it is not specifically a halal meal.  Defendants provided plaintiff and other inmates earlier removed from the kosher list with the option of receiving the common fare meal.  Plaintiff apparently opted for the meal, but only for a brief period of time. In July 2012, he requested a halal meal or, apparently, return to the prior kosher meal list.  NNCC Chaplain James Stogner denied plaintiff's request and informed him that the only religious diet available to him was common fare meal.  Nevertheless, plaintiff continued to grieve the issue, as he believed that the NDOC was providing other inmates, including Christians and Jehovah's Witnesses, a kosher meal other than the common fare.

---

[1] A "halal" meal is one that is consistent with the requirements of Islamic dietary law.  Among other requirements, halal entails particular methods of slaughter and religious blessings, and some outright avoidance of certain types of meat, such as pork.  *See generally Definition of Halal*, Halal Monitoring Committee UK, www.halalhmc.org/DefinitionOfHalal.htm (last visited Mar. 16, 2015).

1    Also in July 2012, plaintiff submitted a grievance, which allegedly followed several prior
2    requests, to effect inclusion of NOI tenets in the NDOC's Religious Practice Manual, which
3    identifies permissible items and other accommodations for religious group members during their
4    prison sentences.  At that time, Islam, but not specifically NOI, was recognized in the Religious
5    Practice Manual.  Although plaintiff's grievance was denied at each level, the NDOC added NOI
6    to the Religious Practice Manual in 2014.
7    Based upon these events, plaintiff brings three counts against NDOC Deputy Director
8    Sheryl Foster, NNCC Associate Warden Lisa Walsh, NNCC Caseworker Shannon Moyle, and
9    NNCC Chaplain James Stogner in their official and individual capacities, for their varying roles
10   in implementing, authorizing, or approving policies or decisions related to these events.  Plaintiff
11   seeks injunctive, declaratory, and compensatory relief.  First, plaintiff alleges that defendants'
12   removal of his name from the kosher meal list in 2011 violated his rights to free exercise and
13   equal protection under the First and Fourteenth Amendments, and also imposed an unlawful
14   burden on his religious exercise in violation of RLUIPA.  Second, under the same constitutional
15   and statutory provisions, plaintiff alleges that defendants' failure to provide him a halal meal or
16   return him to the kosher meal list in 2012 violated his rights.  Finally, again under the same
17   sources of law, plaintiff alleges that defendants violated his rights by failing to recognize NOI in
18   the Religious Practice Manual.

19                              **II.    LEGAL STANDARD**

20   Summary judgment allows the court to avoid unneeded trials.  *Nw. Motorcycle Ass'n v.*
21   *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary
22   judgment when the record discovered by the parties demonstrates that "there is no genuine issue
23   as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
24   56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify
25   which facts are material.  Only disputes over facts that might affect the outcome of the suit under
26   the governing law will properly preclude the entry of summary judgment.  Factual disputes that
27   are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242,
28   248-49 (1986).  A dispute is "genuine" only where a sufficient evidentiary basis would allow a

3

1   reasonable jury to find for the nonmoving party. *Id.* "The amount of evidence necessary to raise a

2   genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing

3   versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983)

4   (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). Conclusory

5   statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts

6   are insufficient to establish a genuine dispute. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-

7   82 (9th Cir. 1996).

8         Summary judgment proceeds in burden-shifting steps. When the moving party bears the

9   burden of proof at trial, it must support its motion "with evidence which would entitle it to a

10   directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v.

11   Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation omitted). In contrast, a

12   moving party who does not bear the burden of proof "need only prove that there is an absence of

13   evidence to support the non-moving party's case[,]" *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376,

14   387 (9th Cir. 2010), and such a party may additionally produce evidence that negates an essential

15   element of the nonmoving party's claim or defense, *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,

16   210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the

17   basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury

18   finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323;

19   *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence

20   and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell

21   v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

22         Where the moving party meets its burden under Rule 56, the nonmoving party must

23   "designate specific facts demonstrating the existence of genuine issues for trial. This burden is

24   not a light one." *In re Oracle Corp.*, 627 F.3d at 387 (internal citation omitted). "The non-

25   moving party must show more than the mere existence of a scintilla of evidence. . . . In fact, the

26   non-moving party must come forth with evidence from which a jury could reasonably render a

27   verdict in the non-moving party's favor." *Id.* (internal citations omitted). The nonmoving party

28   may defeat the summary judgment motion only by setting forth specific facts that illustrate a

1    genuine dispute that requires a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*,

2    477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, *see*

3    Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the

4    material facts" will not defeat a properly-supported summary judgment motion, *Orr*, 285 F.3d at

5    783.

6                                    **III.    DISCUSSION**

7    **A.    Civil Rights Claims Pursuant to 42 U.S.C. § 1983**

8              42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to

9    deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063,

10   1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).  The statute

11   "provides a federal cause of action against any person who, acting under color of state law,

12   deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and is

13   "merely . . . the procedural device for enforcing substantive provisions of the Constitution and

14   federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  Claims under § 1983

15   require the plaintiff to allege (1) the violation of a federally-protected right by (2) a person or

16   official who acts under the color of state law. *Warner*, 451 F.3d at 1067.  To prevail, the plaintiff

17   must allege and prove sufficient facts under each element of the underlying constitutional or

18   statutory right.

19             In this case, defendants are each state prison officials acting within their respective

20   capacities under state law.  Plaintiff alleges violations of his constitutional rights.  Therefore, he

21   has satisfied § 1983's threshold requirements and the court proceeds to analysis of his

22   constitutional and RLUIPA claims.  However, the plaintiff's claims for compensatory damages

23   against defendants in their official capacities should be dismissed under the sovereign immunity

24   doctrine. *Brown v. Oregon Dep't of Corrs.*, 751 F.3d 983, 988-89 (9th Cir. 2014) (citing

25   *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  Thus, the court will

26   consider the § 1983 claims only to the extent that they seek declaratory and prospective injunctive

27   relief, as well as damages against defendants in their individual capacities. *See Thornton v.*

28   *Brown*, 757 F.3d 834, 839 (9th Cir. 2013).  As for the RLUIPA claims, the court will consider

1   only declarative and injunctive relief, as the Ninth Circuit concluded in a recent decision that

2   RLUIPA does not permit suits for money damages against state officials in their individual

3   capacities. *Wood v. Yordy*, 753 F.3d 899, 903 (9th Cir. 2014); *see also Sossamon v. Texas*, —

4   U.S. —, 131 S. Ct. 1651, 1658-61 (2011) (concluding that states and state officials are not liable

5   for monetary damages under RLUIPA absent a state's waiver of sovereign immunity).

6   **B.     First Amendment and RLUIPA Claims**

7          As the court will explain, plaintiff's First Amendment and RLUIPA claims turn on a

8   similar consideration: whether plaintiff's religious exercise was burdened by the alleged events.

9   Accordingly, it considers the claims together.

10  **1.     First Amendment**

11         Inmates "retain protections afforded by the First Amendment, including its directive that

12  no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342,

13  348 (1987) (internal citation omitted).  Thereunder, prisoners "have the right to be provided with

14  food sufficient to sustain them in good health that satisfies the dietary laws of their religion."

15  *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).  To establish a violation of the Free

16  Exercise Clause, the inmate must prove that defendants have burdened a sincerely held belief that

17  is rooted in his religion. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).  The sincerity

18  and basis for the proffered belief may require factual resolution by a jury.  *See Parks v. Brooks*,

19  302 Fed. App'x 611, 612 (9th Cir. 2008); *see also Lewis v. Skolnik*, No. 2:09-cv-02393-KJD-

20  GWF, 2013 WL 178116, at *4 (D. Nev. Jan. 16, 2013).

21         In ordinary circumstances, the state's infringement upon such a belief is sufficient to

22  establish a constitutional violation, unless the government articulates and proves a compelling

23  government interest. *See Sherbert v. Verner*, 374 U.S. 398, 406-07 (1963).  Yet within the prison

24  context, the government need not establish a compelling interest.  Instead, the plaintiff must

25  demonstrate that prison officials lacked reasonable justification for interfering with his religious

26  exercises.  *Shakur*, 514 F.3d at 884.  Courts consider four factors when assessing prison

27  regulations for reasonableness.  These are: (1) the presence of a valid, rational connection

28  between the regulation and a stated penological goal; (2) whether alternative means of exercise

6

1   remain available despite the regulation; (3) the extent of impact upon other inmates and prison

2   staff of the prison's accommodation of the plaintiff's particular religious rite or practice; and (4)

3   the availability of alternative regulations or rules. *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 85

4   (1987)).

5   **2.      RLUIPA**

6           In relevant part, RLUIPA proscribes the state from imposing "a substantial burden on the

7   religious exercise . . ." of prisoners, "unless the government demonstrates that imposition of the

8   burden on that person is in furtherance of a compelling governmental interest; and is the least

9   restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).

10  To establish a RLUIPA violation, the plaintiff must allege and prove that prison officials have

11  substantially burned his religious exercise. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir.

12  2005).   More than a mere inconvenience, *Guam v. Guerrero*, 290 F.3d 1210, 1222 (9th Cir.

13  2002), a "substantial burden" is a regulation or other official action that "intentionally puts

14  significant pressure on inmates . . . to abandon their religious beliefs[,]" *Warsoldier*, 418 F.3d at

15  996.   Upon the plaintiff's satisfaction of this burden, defendants avoid liability only by

16  identifying a compelling governmental interest and demonstrating that the regulation or action

17  was the least restrictive means of achieving that interest. *Id.* at 995.

18  **3.      Analysis**

19  **a.      Counts I and II**

20          In their motion for summary judgment, defendants argue that their various actions and

21  decisions did not burden plaintiff's free exercise rights.  First, as to the rescission of kosher meals

22  in  2011,  they  argue  that  plaintiff  cannot  show  a  burden  because  the  meatless

23  alternative/vegetarian diet available to him complied with halal requirements.  (#52 at 6-7; #52-2

24  at ¶ 6.)  Second, as to plaintiff's 2012 request to return to the kosher meal (as it existed in 2011)

25  or receive a separate halal meal, he cannot demonstrate a burden to his religious exercise because

26  he was approved, but declined, the common fare diet.  (#52 at 10-11; #52-2 at ¶ 5.)  Similarly,

27  defendants contend that the RLUIPA claims fail because plaintiff cannot establish he suffered a

28  burden—let alone a substantial one.  (*Id.* at 16-18.) In the event that the court finds that plaintiff's

1   exercise was burdened, defendants also argue that legitimate penological objectives render the

2   burdens constitutional under the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987).  (#52 at

3   8-10, 11-12.)

4          In his opposition, plaintiff counters that there are genuine factual issues as to whether

5   these actions burdened his religious exercise.  Although he does not state or offer to provide

6   evidence that can prove that he lacked halal-complaint meal options, he declares that he "is not a

7   vegetarian or a vegan and [does] not [wish] to become one . . . ."  (#55 at 11.)  Plaintiff quotes

8   extensively from *Bilal v. Lehman*, No. C04-2507-JLR-JPD, 2006 WL 3626781, at *7-9 (W.D.

9   Wash. Oct. 2, 2006), *recommendation rejected by* 2006 WL 3626808 (W.D. Wash. Dec. 8, 2006),

10  in support of his apparent position that absence of a halal meal, with halal meat, burdens his

11  religious exercises.  (#55 at 11-13.)

12         Defendants are entitled to summary judgement on the First Amendment and RLUIPA

13  claims in counts I and II.  The court accepts the apparent agreement of the parties that adherence

14  to halal requirements is a sincerely held belief rooted in plaintiff's faith.[2]  *Shakur*, 514 F.3d at

15  884-85.  Nevertheless, the record establishes an absence of genuine dispute as to the food-related

16  facts, and these facts demonstrate an absence of burden to plaintiff's religious exercises.  Without

17  a burden, plaintiff's First Amendment and RLUIPA claims necessarily fail.

18         First, as to the count I allegations, plaintiff's religious exercise was not burdened when

19  defendants removed his name from the kosher meal list in 2011.  Defendants have introduced

20  undisputed evidence that they offered plaintiff a meal option, albeit one without meat, that

21  satisfied his religious dietary requirements.  Plaintiff does not contest that the vegetarian meal

22  satisfied the dictates of halal; instead, he merely expresses his dissatisfaction with vegetarianism.

23  Neither his complaint nor his opposition expressly contend that halal meat was a required part of

24  _____

25  [2] The court notes, however, that defendants have introduced records that evidence plaintiff's repeated purchases of
    non-halal food items at the prison coffee shop, including summer sausage and pepperoni pizza. (#52 at 7-8; #52-1 at

26  11, 12, 19, 21-22, 24, 26, 28-29, 33, 34.) Although defendants argue that these purchases demonstrate that the meal
    options could not have burdened his religious exercises, since he evidently ate non-halal food on a regular basis, the

27  court believes that this evidence more readily speaks to the sincerity of plaintiff's beliefs. Although plaintiff submits
    an affidavit, in which he states he does not eat these items (#55 at 17), he omits any explanation for defendants'

28  contrary records. In any case, because the summary judgment record demonstrates alternative bases for decisions,
    the court acknowledges but sets aside this issue.

his diet.   Moreover, defendants are not obligated to provide plaintiff a halal meal that also satisfies each of his dietary predilections.   To the extent he relies on *Bilal* for the proposition that Muslims *must* receive a particular halal meal—that is, one with halal meat or other unmentioned requirements—the court is unpersuaded.   It may well be that the *Bilal* plaintiff's religious exercises required meat, but as the court has observed, plaintiff has not articulated such an allegation in this case or provided evidence in support of such a conclusion.   Accordingly, plaintiff's First Amendment and RLUIPA claims based on the 2011 events lack merit.

Second, defendants did not violate plaintiff's constitutional or statutory religious rights in 2012 when they declined to provide him an Islamic halal meal or provide him the 2011 kosher meal.[3]  Defendants have offered to prove that they implemented the kosher common fare diet and that, when they allowed plaintiff to choose that option, he ultimately declined it. Defendants are not liable for plaintiff's discretionary choices.   Once again, defendants fulfilled all that the First Amendment demanded: in addition to the halal-complaint vegetarian option, plaintiff could choose a kosher meal—one that, per his repeated concessions, is permissible under Islamic dietary law.   His belief that other inmates received something other than the common fare diet is entirely speculative and, in any case, does not alter the undisputed fact that he had several halal-complaint options available to him.

Plaintiff submits in affidavit in which he states that, in his belief, the common fare meal is "illegal" and violates NOI tenets.  (#55 at 17.)  The position is curious, since he does not claim the meal is not kosher, and he does not identify any specific facets of the common fare menu that runs afoul of halal restrictions.   Accepting his affidavit,[4] his opposition nevertheless fails to

---

[3] In the court's understanding, the common fare diet entirely replaced the prior kosher meal.  Accordingly, no inmates continued to receive the meal that plaintiff apparently desired.  Additionally, the court notes that plaintiff discusses an Islamic halal meal, but does not identify how this differs from a kosher meal.  Although it is apparent from his papers that there is some sort of difference, plaintiff provides no basis for concluding that the difference is a meaningful one under Islamic dietary law.

[4] For the purposes of argument, the court accepts plaintiff's statement as to his belief that the common fare meal is not halal compliant, however self-serving his affidavit may be. *See Nigro v. Sears, Roebuck and Co.*, — F.3d —, 2015 WL 774633, at *2-4 (9th Cir. Feb. 25, 2015).  Yet, as the court explained above, the affidavit is devoid of any corroborating details that would allow a reasonable jury to conclude that the common fare meal is not kosher, as defendants have offered to prove.  Assuming defendants would establish that fact, plaintiff's own repeated concessions as to the acceptability of a kosher meal would defeat the claim.

1   evidence a burden: as with the first claim, he has not disputed that the halal-compliant vegetarian

2   option remained available to him.   That he would testify at trial that he "[does] not wish to

3   become [vegetarian]" is wholly irrelevant: the issue is not whether plaintiff wants to eat a

4   vegetarian meal, but instead whether the meal would violate his dietary restrictions.  Because the

5   summary judgment record demonstrates beyond dispute that defendants provided at least one

6   acceptable dietary option in 2012, and likely two, plaintiff's count II contentions that his religious

7   exercise was burdened necessarily fail.

8          Alternatively, the court recommends that that defendants' motion be granted, as to the

9   First Amendment claims in counts I and II, on the basis that any burdens their decisions imposed

10  were lawful under *Turner*.  On the basis of submitted evidence, defendants argue that they had

11  reasonable justification—cost—for removing plaintiff from the kosher list in 2011 and instituting

12  the common fare menu for Jewish and Muslim inmates (among others).   The first factor is

13  whether there is a rational connection between the regulation and goal.   In 2007, only four

14  inmates in Nevada requested kosher meals; by 2011, that sum grew to nearly 300.  (#52 at 9.)

15  There was a plainly significant cost difference between the mainline diet, at $2.40 per day, and

16  the then-existing kosher meal, a pre-packaged meal that cost $15.12 per day.  The growth of the

17  kosher list thereby strained a tight prison food budget.  Removing non-Jewish inmates from the

18  kosher list and, soon thereafter, implementing the common fare menu, reduced the cost of the

19  religious accommodation diets by about one third. (#52-5 at ¶¶ 12, 14.)

20         The second factor also weighs in defendants' favor.  Here, the question is whether the

21  regulation "denied all means of expression."  *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993)

22  (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351-52 (1987)).  Defendants have produced

23  evidence that plaintiff was provided an alternative methods of exercising his faith beliefs.

24  *Turner*, 482 U.S. at 85.  Not only did plaintiff have halal-compliant meal options available to him,

25  he also retained the ability to exercise his faith through group study, prayer, and the like.  Hence,

26  that he may not have been able to consume halal meat—to the extent that it was required—does

27  not alter the outcome.  The record shows that, whatever plaintiff's displeasure with his food

28  choices, defendants did not prevent him from engaging in substantial religious activities.

1    The third factor, the impact upon other inmates and prison staff, *Turner*, 482 U.S. at 85,

2    similarly justifies defendants' decision.  Defendants argue that that the explosion of food costs

3    would require absorption in the form of cuts elsewhere in the budget—whether that be staffing

4    levels, staffing salaries or benefits, or other offerings to inmates in the form of services and

5    rehabilitation programs.  (#52 at 10.)  Finally, the fourth factor, the presence of ready alternatives

6    that impose only nominal costs, *Turner*, 482 U.S. at 85, resolves in defendants' favor.  Rather

7    than deny to plaintiff a diet that accommodates his religious requirements, they initially offered

8    him the vegetarian option, and thereafter the common fare menu—an option that, despite cost

9    savings, nevertheless taxed the prison budget to a far greater degree than the mainline diet.

10    Accordingly, the balance of the *Turner* factors precludes First Amendment liability.  Even if

11    plaintiff's religious exercises were burdened, defendants acted with reasonable justification, and

12    they are entitled to summary judgment on that basis.

13    **b.    Count III**

14    Defendants move for summary judgment on the count III First Amendment and RLUIPA

15    claims, which pertain to the non-inclusion of NOI in the NDOC Religious Practices Manual prior

16    to 2014.  Specifically, they argue that plaintiff has not shown that his exercise was burdened by

17    the lack of recognition.  On the basis of evidence, they argue that Islam was a recognized religion

18    at all relevant times prior to 2014, and plaintiff was, therefore, able to pray, possess religious

19    literature and effects, and participate in group worship and study. (#52 at 13; #52-2 at ¶ 7; #52-6

20    at 6.)  Plaintiff counters NOI Muslims have "[their] own ways and personality" (#55 at 10), by

21    which he intimates, though without other details or corroborating evidence, that the NDOC's

22    failure to incorporate NOI into its religious accommodations impeded NOI's unique exercises.

23    Relatedly, he contends that the NDOC's refusal to recognize NOI "purposefully interfered" with

24    the growth of his faith.  (*Id.* at 9.)  Once again, he provides no greater details and omits

25    evidentiary support.

26    Defendants are entitled to summary judgment.  Plaintiff bears the burden of

27    demonstrating, with specificity, how defendants interfered with his religious rights, yet the

28    complaint lacks particular allegations as to how, precisely, defendants burdened his religious

11

1  exercise by failing to include NOI in the Religious Practice Manual until 2014. Defendants have
2  offered to introduce evidence that proves that plaintiff was able to partake in a wide variety of
3  religious practices based on the inclusion of Islam, and plaintiff does not dispute that evidence.
4  Instead, he offers only uncorroborated and conclusory statements that there are undescribed
5  differences between NOI and mainstream Islamic practices. To defeat summary judgment,
6  plaintiff must identify those differences, explain how defendants interfered with those exercises,
7  and he is obligated to provide evidentiary support for the same. Because he has failed to do so,
8  the summary judgment record precludes any reasonable jury from finding in plaintiff's favor.
9  Therefore, the court recommends that defendants' motion be granted.

10  **C.     Equal Protection Claims**

11  **1.     Standard**

12  "The Equal Protection Clause requires the State to treat all similarly situated people
13  equally[,]" *Shakur*, 514 F.3d at 891 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S.
14  432, 439 (1985)). The preliminary inquiry in an equal protection claim is identifying the
15  plaintiff's relevant class, which is "comprised of similarly situated persons so that the factor
16  motivating the alleged discrimination can be identified." *Furnace v. Sullivan*, 705 F.3d 1021,
17  1030 (9th Cir. 2013) (internal quotation omitted). Then, "a plaintiff must show that the defendant
18  acted with an intent or purpose to discriminate against him based upon his membership in a
19  protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). Because the claim
20  requires proof of intentional discrimination, "[m]ere indifference" to the unequal effects on a
21  particular class does not establish discriminatory intent. *Thornton v. City of St. Helens*, 425 F.3d
22  1158, 1167 (9th Cir. 2005).

23  Within the prison context, the Constitution's equal protection guarantees do not entitle
24  each religious group within a prison to "identical treatment and resources[,]" *Hartmann v. Cal.*
25  *Dep't of Corrs. and Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). When differential treatment is
26  reasonably related to legitimate penological interests under the *Turner* factors, no equal protection
27  claim lies. *Shakur*, 514 F.3d at 891. Although prisons must make "good faith accommodations"
28  to all inmates to practice their religious beliefs, they satisfy this obligation where, whatever the

1    differences between the groups, each inmate has a "reasonable opportunity of pursuing his faith"

2    during his term of incarceration.   *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997),

3    *abrogated on other grounds by Shakur*, 514 F.3d at 884-85.

4    **2.   Analysis**

5        Defendants move for summary judgment on all three counts on the basis that the summary

6    judgment record lacks evidence by which a jury could conclude that defendants acted with

7    discriminatory intent (#52 at 19, 22), and also that plaintiff indisputably received reasonable

8    opportunities to practice his faith.[5]   (*Id.* at 19-20, 21-22.)   Further, defendants argue that the

9    *Turner* factors preclude liability on the equal protection claims related to the prison food.   (*Id.* at

10   20-21.)   In his opposition, plaintiff does not address defendants' arguments and provide

11   corroborated facts pertaining to the elements of an equal protection claim.

12       The court recommends that defendants' motion be granted on the equal protection claims.

13   First, defendants correctly point to an absence of evidence related to discriminatory intent, and

14   plaintiff's opposition fails to identify any evidence in the record from which a jury could

15   conclude that defendants intentionally discriminated against him on the basis of his NOI beliefs.

16   Although plaintiff broadly complains of differential treatment between Muslims and other faith

17   groups (*e.g.* #6 at 9), Ninth Circuit precedent provides that such differences—and mere

18   indifference thereto—is not constitutionally infirm.   *Hartmann*, 707 F.3d at 1123; *Thornton*, 425

19   F.3d at 1167.   Without more, no constitutional claim can prevail.   Second, for the reasons

20   explained in the analysis of the First Amendment and RLUIPA claims, it is readily apparent that

21   defendants accommodated plaintiff's religious beliefs and allowed him a reasonable opportunity

22   to exercise his faith.   *Freeman*, 125 F.3d at 737.   Plaintiff's opposition does not provide any basis

23   for concluding otherwise.

24

25

---

26   [5] On the count II equal protection claim, defendants argue that it necessarily fails because they offered plaintiff a
     kosher meal—the common fare diet—and thus no differential treatment occurred.   As the court explained in its

27   analysis of the count II First Amendment and RLUIPA claims, however, it appears that plaintiff's belief is that the
     denial of the prior meal or the other meal he speculatively mentions violated his rights.   To the extent that defendants

28   are correct in their characterization of the claim, their argument is correct.   Alternatively, the court above explains
     why the claim fails based upon its understanding of count II.

## IV.    CONCLUSION

The court has reviewed the papers of the parties and all other papers, and for good causing appear, the court recommends that defendants' motion for summary judgment be granted.  In short, the summary judgment record contains no basis for concluding that defendants violated plaintiff's religious exercises or equal protection rights.  The court also notes that defendants argued for qualified immunity (#52 at 22-24), but the court does not analyze those arguments because it has concluded the claims fail on their merits.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,  the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#52) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

DATED: March 27, 2015

UNITED STATES MAGISTRATE JUDGE